STATE OF MISSOURI        )
                         ) SS
COUNTY OF ST. LOUIS      )

IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
STATE OF MISSOURI

| | |
|---|---|
| DONNA E. WHITE,                )<br>                                )<br>    Plaintiff,                  )<br>                                )<br>v.                              )<br>                                )<br>UNITED PARCEL SERVICE,          )<br>                                )<br>Serve at:                       )<br>                                )<br>    United Parcel Service       )<br>    13818 Rider Trail           )<br>    Earth City, MO  63045       )<br>                                )<br>    Defendants.                 ) | Cause No.:<br><br>Division No.:<br><br>JURY TRIAL DEMANDED ON<br>ALL COUNTS TRIABLE TO JURY |

## PETITION

COMES NOW, Plaintiff Donna White, by and through undersigned counsel, and for her Petition against Defendant United Parcel Service, states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Donna White (hereinafter "Plaintiff" or "White") is an individual residing in the County of St. Louis, State of Missouri.

2. Defendant United Parcel Service (hereinafter "UPS" or "Defendant") is a Missouri corporation with a facility located in the County of St. Louis, State of Missouri.

3. This Court has jurisdiction over this action because UPS transacts business in Missouri, and all acts and/or omissions giving rise to White's causes of action in this Petition occurred within Missouri.

4. Venue is proper in this Court pursuant to Mo. Rev. Stat. § 213.111.1 because wrongful acts alleged in Whites' Petition occurred within the County of St. Louis. *See Igoe v. Dept. of Labor and Indus. Relations of State of Missouri*, 152 S.W.3d 284, 288 (Mo. banc 2005) (A discrimination action may be brought in any circuit court in any county in which unlawful discriminatory conduct is alleged to have occurred).

5. White filed a First Amended Charge of Discrimination with the Missouri Commission on Human Rights and EEOC on or about November 15, 2010 making a claim of disability discrimination. *Exhibit 1*.

6. On February 9, 2011, the MCHR issued a Notice of Right to Sue for the above charge of discrimination, a copy of which is attached with this Petition. White filed this action within 90 days of the date of this Notice of Right to Sue, and within two (2) years of the last act of disability discrimination alleged herein. *Exhibit 2*.

## FACTS COMMON TO ALL COUNTS

7. At all times relevant herein, UPS was White's employer.

8. At all times relevant herein, Jim Dobson (hereinafter "Dobson") was a superior of White and acting directly in the interest of her employer, UPS. In addition, Dobson had authority over White's continued employment and employment status and made decisions regarding White's employment in violation of White's right to be free of disability discrimination in employment.

9. At all times relevant herein, White was an employee of United Parcel Service at the office located in Earth City, Missouri.

10. White began her employment with UPS in September of 1981 as a loader at an hourly rate of $8.00-9.00 per hour.

2

11. Since White was hired as a loader she was promoted to a full time package car driver.

12. In June of 2008, while taking her Department of Transportation (D.O.T.) examination White was diagnosed with a permanent eye disease that has caused her to become blind in her right eye. At the time White was diagnosed she was a package car driver for UPS.

13. On August 1, 2008, White was told by Terry Winter, District Occupation Health Supervisor to UPS, that she was not eligible for a reasonable accommodation under the Americans with Disabilities Act (ADA) because of a lack of relevant information from her doctor. UPS instructed her to visit her own eye doctor.

14. On August 20, 2008, White was examined by the Eye Center, Inc. The Eye Center wrote a letter summarizing its diagnosis and giving an opinion that it was questionable whether White could operate a commercial vehicle.

15. After visiting two eye doctors White was told that the eye disease was permanent and degenerative and nothing could be done to correct the problem.

16. White informed UPS of her diagnosis and that due to her disability she was unable to operate a commercial vehicle pursuant to her job duties as a package car driver.

17. White was still able to physically perform a job inside of the UPS hub.

18. White asked UPS to be transferred inside the hub to work because of her disability or a reasonable accommodation.

19. UPS did not transfer White for two (2) months, during which time she was unable to operate a commercial vehicle pursuant to her assigned job duties due to her disability.

20. Dobson stated that White would not be receiving back pay or seniority pay after she was diagnosed with the eye disease.

21. Dobson informed White that if she wanted her pay she would have to return to a UPS doctor and pass the eye exam to become a driver again. Dobson attempted to force White into a driving position despite the UPS doctor's findings and D.O.T. regulations.

22. On May 26, 2010, White received a letter from Local 688 requesting that she attend a Mokan meeting the same day the letter was delivered. When White arrived to the meeting Local 688 shop stewards explained to White that if she presented her grievance she would lose her job.

23. White is currently employed as a full-time sorter with UPS and she is being discriminated against due to her permanent disability.

24. Due to White's permanent and degenerative eye disability she has been denied compensation at the rate she was previously paid.

25. UPS previously compensated and continues compensate other package sorters with more temporary disabilities than White at a higher wage.

26. White is not being paid her seniority wages.

27. White is not being paid her wages because UPS refuses to pay her full wages.

28. The disability discrimination against White by UPS is continuing action. White has not been given her back-pay under the prevailing rate. Further, UPS continues to discriminate against White since each paycheck White receives does not pay her the prevailing rate according to seniority.

## COUNT ONE
## (EMPLOYMENT DISCRIMINATION – DISABILITY)

29. White incorporates by reference the allegations contained in paragraphs 1 through 28 as if fully stated herein.

30. White was treated differently than other sorters because of her disability and/or perceived disability.

31. White's disability was a contributing factor in UPS's decision not to pay White back-pay and/or the prevailing rate according to her seniority and other unfair treatment of White.

32. At least one of UPS's continuous acts of discrimination against White occurred within the filing period.

33. UPS's discrimination of White involves a continuous series of closely-related, similar events that occurred within the same general time period.

34. UPS's discrimination of White is part of an ongoing practice.

35. UPS employs several similarly situated, permanently disabled workers who are paid at the prevailing rate regarding their seniority, including other former commercial vehicle drivers who became sorters due to permanent disability.

36. UPS employs several temporarily disabled workers who are paid at the prevailing rate regarding their seniority.

37. White is a qualified individual with a permanent disability and/or perceived disability that is able to work in the sorter position.

38. White does not use any medications or medical equipment that lessen or eliminate the symptoms of her permanent, degenerative eye disease.

39. UPS regarded White as a disabled employee.

5

40. White's permanent disability and/or perceived disability was a contributing factor in UPS's decision not to pay her the prevailing rate or seniority pay.

41. White's permanent disability and/or perceived disability was a contributing factor in the UPS's decision to inform her that if she sought the prevailing rate to which she was entitled she would be terminated.

42. As a direct result of UPS's unlawful acts, as aforesaid, White has suffered emotional distress and experienced lost wages, loss of benefits, and loss of other fringe benefits incident to employment. White will continue to experience and suffer such damages into the future.

43. As a result of UPS's conduct and actions alleged herein, White suffered emotional distress and mental anguish and will continue to suffer such emotional distress into the future.

44. UPS's conduct against White as a result of her permanent disability and/or perceived disability was done intentionally, knowingly, maliciously, and in willful and wanton disregard and with reckless indifference to White's rights, subjecting UPS to the imposition of punitive damages.

45. As a result of UPS's conduct and allegations alleged herein, White incurred attorneys' fees and costs of litigation, and will continue to incur such fees and costs.

WHEREFORE, White requests that this Court, after trial by jury, enter judgment for White and against UPS, in amounts to be determined at trial, for White's lost wages and benefits of employment and interest thereupon; for front pay; for emotional distress damages; for punitive damages; for attorneys' fees and costs of litigation; for this Court

to enjoin UPS from engaging in disability discrimination, and for such other relief as this Court deems just and proper.

## COUNT TWO
### (RETALIATION)

46. White incorporates by reference the allegations contained within paragraphs 1 through 45 as if fully stated herein.

47. White filed a First Amended Charge of Discrimination with the Missouri Commission on Human Rights and EEOC on or about November 15, 2010 making a claim of disability discrimination. *Exhibit 1.*

48. White exercised a protected right when she filed a complaint of disability discrimination with the EEOC and MCHR in opposition to UPS's employment practices that constituted disability discrimination and retaliation as prohibited under MHRA.

49. UPS subsequently treated White more poorly upon learning that White exercised her protected right to complain of disability discrimination under the MHRA and ADA.

50. White's opposition to UPS's changed rate of pay due to her disability, UPS's unlawful employment practices, White's charges of discrimination filed with the EEOC and MCHR, and notice of such charges given to UPS were all contributing factors in UPS's decision to treat White more poorly.

51. As a direct and proximate result of the unlawful conduct of UPS, as set forth herein, White suffered damages which include mental anguish, emotional distress, lost wages and benefits of employment, a detrimental job record, career damages, diminished career potential, and mental distress in the form of embarrassment,

degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep, and other non-pecuniary losses. 29 U.S.C. § 1166(a)(2).

52. The conduct of UPS was based upon an evil motive, was intentional, malicious, and consciously disregarded the rights of White, entitling White to an award of punitive damages.

53. White is also entitled to recover all costs, expenses, and attorneys' fees incurred in this matter.

WHEREFORE, White prays for judgment against UPS, for costs herein incurred, actual, compensatory and punitive damages, including reasonable attorneys' fees and costs of litigation, interest at the highest lawful rate, lost wages and benefits of employment, front pay, damages for emotional distress, for this Court to enjoin UPS from engaging in further retaliation in the future, and for such other relief as the Court deems just and proper.

Respectfully Submitted,

By: *[signature]*
Kevin J. Dolley, #54312
Law Offices of Kevin J. Dolley
7750 Clayton Road, Suite 102
(314)645-4100 (office)
(314)645-7901 (fax)
kevin@dolleylaw.com

*Attorney for Plaintiff*

8

**REDACTED**

MISSOURI DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS
COMMISSION ON HUMAN RIGHTS
**CHARGE OF DISCRIMINATION** (First Amended)

*This form is affected by the Privacy Act of 1974; see Privacy Act Statement before completing this form.*

Enter Charge Number
☐ FEPA  560-2010-02888
☒ EEOC

**EXHIBIT 1**

### Missouri Commission on Human Rights and EEOC

| Name (Indicate Mr., Ms., or Mrs.) | Date of Birth | Home Telephone No. (Include Area Code) |
|---|---|---|
| Mrs. Donna E. White | /59 | 314-546-8797 |
| Street Address | City, State and Zip Code | County |
| 8217 January | Berkeley, MO 63134 | St. Louis |

**Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship, Committee, State or Local Government Agency who discriminated against me (if more than one list below).**

| Name | No. of Employees/Members | Telephone No. (Include Area Code) |
|---|---|---|
| Teamsters Local 688 | 15 - 100 | 314-513-5800 |
| Street Address | City, State and Zip Code | |
| 4349 Woodson Rd. | Berkeley, MO 63134 | |
| Name | No. of Employees/Members | Telephone No. (Include Area Code) |
| United Parcel Service | Unkown | 314-344-3763 |
| Street Address | City, State and Zip Code | |
| 13818 Rider Trail | Earth City, MO 63045 | |

Cause of Discrimination based on (Check appropriate box(es))
☐ Race ☐ Color ☐ Sex
☐ National Origin ☐ Religion ☐ Age
☒ Disability ☒ Retaliation ☐ Other (Specify)

Date Discrimination took Place (Month, Day, Year)
12/14/2009
☒ Continuing Action

The Particulars Are (If additional space is needed, attach extra sheet(s)):

1. Complainant Donna E. White ("White") is a legal resident of the United States who currently resides in Missouri.
2. Respondent Teamsters Local 688 ("Local 688") is union located in Hannibal, Missouri.
3. Respondent United Parcel Service ("UPS") is a corporation with a facility located in Earth City, Missouri.
4. In September of 1981, White was initially hired as a loader for the UPS office in Earth City, Missouri at an hourly rate of $8.00-9.00 per hour.
5. On December 14, 2009, White held the job title of package car driver and her pay rate was $24.44.
6. In June 2008, while taking her Department of Transportation (D.O.T.) examination White was diagnosed with an eye disease that has caused her to become blind in her right eye. At the time White was diagnosed, she was a package driver for UPS.
7. On August 1, 2008, White was notified by Terry Winter, District Occupational Health Supervisor to UPS, that she was not eligible for a reasonable accommodation under the Americans with Disabilities Act (ADA) because of a lack of relevant information from her doctor. UPS instructed her to visit her own eye doctor.
8. On August 20, 2008, White was examined by The Eye Center, Inc. The Eye Center wrote a letter summarizing its diagnosis and giving an opinion that it was questionable whether White could operate a commercial vehicle.
9. After visiting two eye doctors White was told that the eye disease was permanent and nothing could be done to correct the problem.
10. White then informed Kris Kershaw, a UPS nurse, of her diagnosis.

BONNIE COLLEEN ROBINSON
Notary Public
Notary Seal
STATE OF MISSOURI
Commission # 09713002

☒ I want this charge filed with both the EEOC and the Missouri Commission on Human Rights. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – (When necessary to meet State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

X *Donna White* 11/15/10
Charging Party (Signature)   Date

X *Donna White*
Signature of Complainant

Subscribed and sworn to before me this date (Day, month and Year)

11. As per the Memorandum of Understanding between UPS and Local 688 White followed proper protocol for placement in a different position for a person with permanent disability. White was still able to physically perform a job inside of the UPS hub.

12. White asked UPS to be moved back inside the hub to work because of her disability. The company did not move her for two (2) months. National Master/United Parcel Service Agreement and Central Region Supplement states that a grievance hearing should be held within 10 days which did not occur.

13. On December 14, 2009, White attended a grievance hearing with UPS at 13818 Rider Trail South. The other members in attendance were the union shop steward, Virginia Duckworth, 2 supervisors from UPS, the Local 688 representatives Ralph Ahart and Jim Dobson, the labor management for UPS. UPS Labor Manager Jim Dobson stated in the hearing that White would not be receiving back pay or seniority pay after she was diagnosed with the eye disease. Dobson informed White that if she wanted her pay she would have to return to the UPS doctor and pass the eye exam to become a driver again. Dobson attempted to force White into a driving position despite the UPS doctor's findings and D.O.T. regulations.

14. When White was finally moved her employer refused to follow the Memorandum of Understanding.

15. On May 26, 2010 White received a letter from the Local 688 signed by Ralph Ahart ("Ahart") requesting that she attend a Mokan meeting scheduled for May 26, 2010 at 9:00 at the union hall on Woodson Rd.

16. On May 26, 2010 White arrived to the meeting. Ralph Ahart and a shop steward, Tim Minor, were also at the meeting. Ahart and Minor explained to White that if she presented her grievance to the Mokan committee that she would get her back pay, but that she would also lose her job.

17. White is currently employed as a sorter with UPS.

18. White is losing $200.00 per week because UPS refuses to pay the rate specified in her contract. That contract state that the prevailing area rate for part-time employees hired before July 1, 1982 is as follows: August 1, 2008 to February 1 2009 is $28.37; February 1, 2009 to August 1, 2009 is $29.095; August 1, 2009 to February 1, 2010 is $29.47; February 1, 2010 to August 1, 2010 is $29.845; and August 1, 2010 to February 1, 2011 is $30.22. UPS refuses to pay the applicable prevailing rate during the above period. White is being denied her seniority pay rate.

19. White does not use any medications or medical equipment that lessen or eliminate the symptoms of her eye disease.

20. White is a qualified individual with a disability that is able to work in a sorter position.

21. White's disability was a contributing factor in the decision not to pay her the prevailing rate.

22. White's disability was a contributing factor in the decision to inform her that if she sought the prevailing rate to which she was entitled she would be terminated.

23. White was unlawfully discriminated against because of her disability. White has numerous similarly situated co-workers who are paid at the prevailing rate regarding their seniority, including other sorters.

24. The discrimination against White by UPS is a continuing action. White has not been given her back-pay under the prevailing rate. Further, UPS continues to discriminate against White since each paycheck White receives does not pay her the prevailing rate.

25. Because of UPS's wrongful, discriminatory actions, White has suffered economic losses, including lost wages and benefits of employment, emotional distress and mental anguish and is making a claim for punitive damages and attorney's fees.

BONNIE COLLEEN ROBINSON
Notary Public
Notary Seal
STATE OF MISSOURI
Commission # 09713002

☒ I want this charge filed with both the EEOC and the Missouri Commission on Human Rights. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - (When necessary to meet State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

x _Donna White_   11/15/10
Charging Party (Signature)        Date

x _Donna White_
Signature of Complainant

Subscribed and sworn to before me this date (Day, month and Year)




**MISSOURI DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS**
# MISSOURI COMMISSION ON HUMAN RIGHTS

| JEREMIAH W. (JAY) NIXON | LAWRENCE G. REBMAN | ALVIN CARTER | ALISA WARREN PH.D. |
| GOVERNOR | DEPARTMENT DIRECTOR | COMMISSION CHAIRPERSON | EXECUTIVE DIRECTOR |



FE-11/10-13162

Donna E. White
8217 January
Berkeley, MO 64134

RE: White vs. UPS et al
FE-11/10-13162   560-2010-02888

The Missouri Commission on Human Rights (MCHR) is terminating its proceedings and issuing this **NOTICE OF YOUR RIGHT TO SUE** under the Missouri Human Rights Act because you have requested a notice of your right to sue.

You are hereby notified that you have the right to bring a civil action within 90 days of the date of this letter against the respondent(s) named in the complaint. Such an action may be brought in any state circuit court in any county in which the unlawful discriminatory practice is alleged to have occurred, either before a circuit or associate circuit judge. Not only must any action brought in court pursuant to this right to sue authorization be filed within 90 days from the date of this letter, any such case must also be filed **no later than two years after the alleged cause occurred** or your reasonable discovery of the alleged cause.

**IF YOU DO NOT FILE A CIVIL ACTION IN STATE CIRCUIT COURT RELATING TO THE MATTERS ASSERTED IN YOUR COMPLAINT WITHIN 90 DAYS OF THE DATE OF THIS NOTICE (AND WITHIN TWO YEARS OF THE ALLEGED CAUSE, OR THE DISCOVERY OF THE ALLEGED CAUSE, OF YOUR COMPLAINT), YOUR RIGHT TO SUE IS LOST.**

You are also notified that the Executive Director is administratively closing this case and terminating all MCHR proceedings relating to your complaint. You may not reinstate this complaint with the MCHR or file a new complaint with the MCHR relating to the same act or practice, but rather, if you choose to continue to pursue your complaint, you must do so in court as described in this letter. This notice of right to sue has no effect on the suit-filing period of any federal claims.

In addition to the process described above, if any party is aggrieved by this decision of the MCHR, that party may appeal the decision by filing a petition under § 536.150 of the Revised Statutes of Missouri in state circuit court. Any such petition must be filed in the circuit court of Cole County.

Respectfully,

Alisa Warren Ph.D.
Executive Director

February 9, 2011
Date

| UPS | Teamsters Local 688 | Kevin J. Dolley |
| 13818 Rider Trail | 4349 Woodson Rd. | 7750 Clayton Road, Suite 102 |
| Earth City, MO 63045 | Berkeley, MO 63134 | St. Louis, MO 63117-1343 |
| | | *Via email* |

☒
3315 W. TRUMAN BLVD.
P.O. BOX 1129
JEFFERSON CITY, MO 65102-1129
PHONE: 573-751-3325
FAX: 573-751-2905

☐
111 N. 7TH STREET, SUITE 903
ST. LOUIS, MO 63101-2100
PHONE: 314-340-7590
FAX: 314-340-7238

☐
P.O. BOX 1300
OZARK, MO 65721-1300
FAX: 417-895-6024

☐
1410 GENESSEE, SUITE 260
KANSAS CITY, MO 64102
FAX: 816-889-3582

☐
106 ARTHUR STREET
SUITE D
SIKESTON, MO 63801-5454
FAX: 573-472-5321

Relay Missouri: 800-735-2966
www.labor.mo.gov/mohumanrights   mchr@labor.mo.gov

# THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

### Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

### Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

### Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

(1) **Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the partes. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

CCADM73